**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

FILED
04 MAR -8 PM 2: 21
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| LAMAR INTERNATIONAL, INC. )<br>and FREDERICK L. BURNETT, )<br>                                        )<br>        Plaintiffs, )<br>                                        )<br>vs. )<br>                                        )<br>RACOE, INC. d/b/a RACOE )<br>MANUFACTURING, *et al.,* )<br>                                        )<br>        Defendants. ) | Civil Action No. CV-03-S-1460-NE |

## MEMORANDUM OPINION

This action is before the court on the following motions:  (1) defendants'

motion to dismiss for lack of personal jurisdiction, or in the alternative, to transfer

venue;[1] and (2) defendants' motion to strike a portion of plaintiffs' evidentiary

submissions.[2]  Defendants submitted a brief and evidentiary submissions in support

of the motion to dismiss.[3]  Accordingly, the court gave notice to the parties that the

motion to dismiss would be converted to a motion for summary judgment, and that all

submissions should be prepared accordingly.[4]

### I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 permits any party to a civil action to move

---

[1]Doc. no. 6.

[2]Doc. no. 12.

[3]*See* doc. no. 7.

[4]*See* doc. no. 8.

for summary judgment upon a claim, cross-claim, or counterclaim on which there is

no genuine issue of material fact, and upon which the moving party is entitled to

prevail as a matter of law.

> The judgment sought *shall be rendered forthwith if* the pleadings,
> depositions, answers to interrogatories, and admissions on file, together
> with the affidavits, if any, show that there is no genuine issue as to any
> material fact and that the moving party is entitled to judgment as a matter
> of law.

Fed. R. Civ. P. 56(c) (emphasis supplied).  Thus, "the plain language of Rule 56(c)

mandates the entry of summary judgment, after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear

the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct.

2548, 2553, 91 L. Ed. 2d 265 (1986).  The motion pierces the pleadings, and "strikes

at the heart of the claim.  In effect it argues that as a matter of law upon admitted or

established facts the moving party is entitled to prevail."  Charles Alan Wright, *The

Law of Federal Courts* § 99, at 705 (5th ed. 1994).

The moving party bears the initial burden of showing the court, by reference to

materials on file, that there are no genuine issues of material fact to be decided at trial.

*See, e.g., Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553; *Clark v. Coats & Clark, Inc.*,

929 F.2d 604, 608 (11th Cir. 1991).  The movant discharges this burden by "showing"

-2-

or "pointing out" to the court that there is an absence of evidence to support the opposing party's case. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) *(per curiam)*.  Rule 56 permits the movant to discharge this burden with or without supporting affidavits. *See Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553.

When the moving party has discharged its burden, the opposing party must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *See Jeffery*, 64 F.3d at 593.  The non-moving party must come forward with more than a "mere 'scintilla'" of evidence; instead, "there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

When deciding whether the moving party has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-moving party, and, to resolve all reasonable doubts in that party's favor. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993); *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).  Inferences in favor of the non-moving party are not unqualified, however.  "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture

and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983). Moreover, inferences that are "merely colorable,"[5] conclusory,[6] conjectural, or "not significantly probative"[7] do not create a genuine issue of material fact. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corporation v. Dunmar Corporation*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). In short, to avoid summary judgment, the opposing party must come forward with specific facts that are "material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicious." *American Lease Plans, Inc. v. Silver Sand Co. of Leesburg, Inc.*, 637 F.2d 311, 315 (5th Cir. 1981).[8]

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *See Augusta Iron & Steel Works v. Employers Insurance of Wausau*, 835 F.2d 855, 856 (11th Cir.

---

[5]*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988).

[6]*See Johnson v. Fleet Finance, Inc.*, 4 F.3d 946, 949 (11th Cir. 1993); *Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989).

[7]*Anderson*, 477 U.S. at 249-50, 106 S. Ct. at 2510-11.

[8]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510).

> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); *see also Four Parcels of Real Property*, 941 F.2d at 1437.  The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S. Ct. at 2512.

## II. FACTUAL BACKGROUND[9]

Plaintiff Lamar International, Inc. ("Lamar") is an Alabama corporation with its principal place of business in Huntsville, Alabama.[10]  Plaintiff Frederick Burnett is the president and owner of Lamar, and an Alabama resident.[11]  Defendant Racoe,

---

[9]Plaintiffs have failed to provide any affidavits or other concrete factual statements in opposition to defendants' motion to dismiss or to transfer venue. Accordingly, the court relied upon the allegations of in plaintiffs' complaint, and on the *uncontroverted* affidavits submitted by defendants in support of the motion to dismiss or to transfer venue, to ascertain the relevant facts.

[10]Doc. no. 1 (complaint), at ¶ 1.

[11]*Id.*

Inc. ("Racoe"), is a Tennessee corporation with its principal place of business in Red Boiling Springs, Tennessee.[12]  Defendant Ray Coe is the Secretary of Racoe, and a resident of Red Boiling Springs, Tennessee.[13]   Defendant Geraldine Coe is the President of Racoe, and also a resident of Red Boiling Springs, Tennessee.[14] Defendant Joel Coe is the Vice-President of Manufacturing for Racoe, and a resident of Lafayette, Tennessee.[15]

Racoe is a small, family-owned business which engages in "cut and sew" operations in the manufacture of apparel, such as shirts and pants.[16]  Racoe does not have, and never has had, an office in Alabama.[17]  Racoe also is not, and never has been, registered to do business in Alabama.[18]

Representatives of Lamar approached representatives of Racoe at Racoe's Tennessee office to determine Racoe's interest in cutting and sewing forestry pants which Lamar had agreed to supply to the United States Forestry Service pursuant to

---

[12]*Id.* at ¶ 2.

[13]Doc. no. 7 (brief in support of motion for summary judgment), Exhibit B (declaration of Ray Coe), at ¶ 2.  Plaintiffs' complaint states that Ray Coe is the President of Racoe.  Complaint, at ¶ 2(B).  However, Coe states in his declaration that he *formerly* was the President of Racoe, but is now the Secretary, a fact plaintiffs later accept as true in their response to defendants' motion for summary judgment. *See* doc. no. 14 (brief in opposition to summary judgment), at 5.

[14]Brief in support of motion for summary judgment, Exhibit C (declaration of Geraldine Coe), at ¶ 2.

[15]*Id.,* Exhibit A (declaration of Joel Coe), at ¶ 2.

[16]*See, e.g., id.* at ¶ 5.

[17]*Id.* at ¶ 4.

[18]*Id.*

a General Services Administration ("GSA") Contract.[19]  The parties engaged in negotiations in Tennessee regarding the terms of the agreement, and the agreement ultimately was reached in Tennessee.[20]  Lamar purchased fabric for Racoe to use in sewing the pants from Southern Mills, Inc. ("Southern Mills"), a company located in Union City, Georgia, and the fabric was sent directly to Racoe from Southern Mills' Georgia office.[21]  When Racoe finished sewing the pants, it sent them directly from its office in Tennessee to Lamar's customer in Stockton, California.[22]

Representatives from Racoe made personal visits to Alabama on two occasions relevant to this action.  First, during October of 2001, Joel Coe and Charlie Ferguson, Racoe's Cutting Manager, traveled to a sportswear manufacturing facility in Leighton, Alabama, for the purpose of viewing a demonstration of a manufacturing technique given by Southern Mills.[23]  This first visit lasted approximately two hours.[24]  The second visit occurred a few weeks later.  On that occasion, Joel Coe and Charlie

---

[19]*See* complaint, at ¶ 5; brief in support of motion for summary judgment, at 3; brief in opposition to summary judgment, at 1.  The parties dispute the terms of their agreement, and particularly whether the document attached as Exhibit A to plaintiffs' complaint, and as Exhibit B to plaintiffs' response to the motion for summary judgment, constitutes the actual agreement between the parties.  However, as discussed in § III(B)(1), *infra,* the precise terms of the contract are not material to the determination of whether the court has personal jurisdiction over the defendants to this action.

[20]*See, e.g.,* Joel Coe declaration, at ¶ 6.

[21]*See, e.g., id.* at ¶ 10.

[22]*Id.*

[23]*Id.* at ¶ 9.  The record does not reflect why Southern Mills gave this demonstration at the Alabama facility, rather than at its own headquarters in Georgia.

[24]*Id.*

Ferguson again visited Alabama to demonstrate to officials of Southern Mills that rolls of fabric supplied to Racoe by Southern Mills' Georgia plant were not the correct size.[25] This visit also lasted approximately two hours.[26] Defendants Ray Coe and Geraldine Coe never made any personal visits to Alabama which were related to Racoe's contract with Lamar.[27]

A dispute soon arose among the parties regarding performance and payment under the contract. Plaintiffs contend that Racoe refused to continue cutting and sewing pants pursuant to its contract, unless Lamar agreed to a price increase of $1.00 per pair of pants.[28] Because Racoe's failure to produce the pants would have placed Lamar in breach of its contract with GSA, and would have threatened Lamar's ability to obtain GSA contracts in the future, Lamar agreed to the price increase.[29] Plaintiffs also contend that Racoe required Lamar to pay for shipments prior to allowing goods to be shipped;[30] that Racoe caused delays in Lamar's shipments of goods to the GSA;[31] that Racoe charged Lamar interest on goods that had not yet been shipped;[32] that

---

[25]*Id.* It is not clear from the record which Alabama city Coe and Ferguson visited on this occasion, or at which facilities they met with the Southern Mills officials. It also is not clear why this meeting occurred in Alabama, rather than at Southern Mills' Georgia office.

[26]*Id.*

[27]Ray Coe declaration, at ¶ 10; Geraldine Coe declaration, at ¶5.

[28]Complaint, at 4-5.

[29]*Id.* at 5-6.

[30]*Id.* at 10.

[31]*Id.*

[32]*Id.*

Racoe lost and/or converted materials supplied by Lamar;[33] and that Racoe shorted shipments of completed goods.[34]

Plaintiffs filed suit in this court on June 18, 2003. Plaintiffs assert a claim against all defendants for violation of the Racketeer Influenced and Corrupt Organizations Act of 1970, 18 U.S.C. § 1961, *et seq.* ("RICO").[35] Plaintiffs also assert the following state law claims for relief against all defendants: (1) breach of contract; (2) intentional interference with a business relationship; (3) negligence; (4) action on a bailment; (5) outrage; (6) conversion; (7) trespass; (8) detinue; and (9) intentional infliction of mental anguish.[36] Plaintiff thus invoked both this court's federal question jurisdiction under 28 U.S.C. § 1331 and 18 U.S.C. § 1964(a), based on the federal RICO count in plaintiff's complaint, and, this court's diversity jurisdiction under 28 U.S.C. § 1332.[37]

## III. DISCUSSION

Defendants argue that plaintiffs' complaint should be dismissed due to this court's lack of personal jurisdiction over them. Federal district courts are tribunals of limited jurisdiction, "'empowered to hear only those cases within the judicial power

---

[33]*Id.* at 7-8.

[34]*Id.* at 13.

[35]Complaint, at 25-32.

[36]*See generally* complaint.

[37]The parties do not dispute this court's *subject matter* jurisdiction.

of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *University of South Alabama v. The American Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). "'Personal jurisdiction . . . is an essential element of the jurisdiction of a district . . . court, without which the court is powerless to proceed to an adjudication.'" *Mercantile Capital, LP v. Federal Transtel, Inc.*, 193 F. Supp. 2d 1243, 1247 (N.D. Ala. 2002) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584, 119 S. Ct. 1563, 1570, 143 L. Ed. 2d 760 (1999) (in turn quoting *Employers Reinsurance Corp. v. Bryant*, 299 U.S. 374, 382, 57 S. Ct. 273, 277, 81 L. Ed. 289 (1937)).

When a district court's jurisdiction is at issue, and an evidentiary hearing has not been held,

> [t]he plaintiff bears the initial burden of alleging personal jurisdiction by pleading sufficient material facts to establish the basis for exercise of such jurisdiction. *Future Technology Today, Inc. v. OSF Healthcare Systems*, 218 F.3d 1247, 1249 (11th Cir. 2000). If the plaintiff has done so, the burden shifts to the defendant to make a prima facie evidentiary showing, by affidavits or otherwise, that personal jurisdiction is not present. *Id.* If the defendant sustains that responsibility, *the plaintiff is then required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and he may not merely reiterate the factual allegations in the complaint. Id.* However, the allegations in the complaint still must be taken as true to the extent they are uncontroverted by the defendant's affidavits. *S & Davis Intern., Inc. v. The Republic of Yemen*, 218 F.3d 1292, 1303 (11th Cir. 2000). And if the parties present conflicting evidence, all factual disputes are

> resolved in the plaintiff's favor, and the plaintiff's prima facie showing
> will be sufficient to survive the motion to dismiss notwithstanding the
> contrary presentation by the moving party. *Id.*

*Mercantile Capital,* 193 F. Supp. 2d at 1247.

## A.   Personal Jurisdiction Over State Law Claims

The determination of personal jurisdiction over a nonresident defendant is a

two-step analytical process for a federal district court sitting in diversity. First, the

court must address the reach of the forum state's long-arm statute. Second,

> [i]f there is a basis for the assertion of personal jurisdiction under the
> state statute, [the district court must] next determine whether sufficient
> minimum contacts exist to satisfy the Due Process Clause of the
> Fourteenth Amendment so that "maintenance of the suit does not offend
> 'traditional notions of fair play and substantial justice.'" Only if both
> prongs of the analysis are satisfied may a federal or state court exercise
> personal jurisdiction over a non-resident defendant.

*Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253, 256 (11th Cir. 1996) (citations

omitted) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S. Ct.

154, 158, 90 L. Ed. 95 (1945)).

"Alabama permits its courts to exercise jurisdiction over nonresidents to the

fullest extent allowed under the Due Process Clause of the Fourteenth Amendment to

the Constitution." *Ruiz de Molina v. Merritt & Furman Insurance Agency, Inc.,* 207

F.3d 1351, 1355-56 (11th Cir. 2000) (citing Ala. R. Civ. P. 4.2(a)(2)(I);[38] *Martin v.*

---

[38] Rule 4.2(a)(2)(I) of Alabama Rules of Civil Procedure provides, in pertinent part:

(2) Sufficient Contacts. A person has sufficient contacts with the state when

-11-

*Robbins*, 628 So. 2d 614, 617 (Ala. 1993); *Horn v. Effort Shipping Co., Ltd.*, 777 F.

Supp. 927, 929 (S.D. Ala. 1991)); *see also Investors Guaranty Fund, Ltd. v. Compass*

*Bank*, 779 So. 2d 185, 188-89 (Ala. 2000).   Thus, "the state law and due process

analyses collapse into a single inquiry . . . ." *Butler v. Beer Across America,* 83 F.

Supp. 2d 1261, 1266 (N.D. Ala. 2000) (citing *Brown v. Astron Enterprises, Inc.,* 989

F. Supp. 1399, 1404 (N.D. Ala. 1997)).

Further, "[p]ersonal jurisdiction may be general, which arise [sic] from the

party's contacts with the forum state that are unrelated to the claim, or specific, which

arise [sic] from the party's contacts with the forum state that *are* related to the claim."

*Nippon Credit Bank, Ltd. v. Matthews,* 291 F.3d 738, 747 (11th Cir. 2002) (citing

*Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415 n.9, 104 S. Ct.

1868, 1872, 80 L. Ed. 2d 404 (1984); *Madara v. Hall,* 916 F.2d 1510, 1516 n.7 (11th

Cir. 1990)) (emphasis supplied).   Neither type of personal jurisdiction exists over the

defendants in this case.

---

that person, acting directly or by agent, is or may be legally responsible as a
consequence of that person's:

. . .

(I) otherwise having some minimum contacts with this state and, under the
circumstances, it is fair and reasonable to require the person to come to this state to
defend an action. The minimum contacts referred to in this subdivision (I) shall be
deemed sufficient, notwithstanding a failure to satisfy the requirement of
subdivisions (A)-(H) of this subsection (2), *so long as the prosecution of the action
against a person in this state is not inconsistent with the constitution of this state or
the Constitution of the United States.* [Emphasis supplied.]

### 1.     General Jurisdiction

General jurisdiction arises from an out-of-state defendant's activities in the

forum state which are unrelated to the plaintiff's cause of action.

> "The due process requirements for general personal jurisdiction are more
> stringent than for specific personal jurisdiction, and require a showing
> of *continuous and systematic general business contacts* between the
> defendant and the forum state." The "nonresident corporation's contacts
> with the forum that are unrelated to the litigation must be substantial" to
> warrant the exercise of general jurisdiction.

*Matthews,* 291 F.3d at 747 (emphasis supplied) (quoting *Consolidated Dev. Corp. v.*

*Sheritt, Inc.,* 216 F.3d 1286, 1292 (11th Cir. 2000)).

### a.     Corporate defendant Racoe

Plaintiffs argue that general personal jurisdiction over Racoe exists, because

Racoe has "been doing business in Alabama for a number of years."[39]  To support its

argument, Lamar asserts that Racoe has an ongoing contract with Russell Corporation,

an Alabama business.[40]  However, that one contract, standing alone, is not sufficiently

---

[39]Brief in opposition to summary judgment, at 7.  Lamar's brief confuses the concepts of
general and specific personal jurisdiction.  Lamar attempts to use the fact of Racoe's contract with
it to establish general jurisdiction over Racoe.  Lamar's argument misses the point, however,
because only Racoe's contacts with Alabama that are *unrelated* to this cause of action are relevant
to the general jurisdiction analysis.  Lamar's business relationship with Racoe, on the other hand,
is the very essence of the action.  Thus, Lamar's relationship with Racoe is relevant only to the
question of *specific* jurisdiction, and the court will consider it as such.

[40]As evidence of Racoe's contract with Russell Corporation, Lamar offers a printout from
an Internet website which lists Russell Corporation as a customer of Racoe's.  *See* doc. no. 11
(Plaintiffs' Evidentiary Submissions), at Exhibit 1.  This document is the subject of defendants'
motion to strike.  Doc. no. 12.  Defendants argue the exhibit should be stricken from the record
because it is irrelevant, because it is inadmissible hearsay, and because it has not been properly
authenticated.  *Id.*  Defendants do not deny having *any* business contact with Russell Corporation.

substantial to establish the "continuous and systematic general business contacts" necessary for a federal court sitting in Alabama to exercise general personal jurisdiction over Racoe, a Tennessee corporation. *See Sheritt,* 216 F.3d at 1292.

The Eleventh Circuit has refused to approve the exercise of general personal jurisdiction in cases involving facts similar to those presented here. For example, in *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.,* 786 F.2d 1055 (11th Cir. 1986), the Court held that Lovett & Tharpe, the out-of-state defendant, did not have the requisite "continuous and systematic general business contacts" with the forum state to satisfy due process requirements.[41]   The Court explained its reasoning as follows:

> Lovett & Tharpe is a Georgia corporation; all the officers are residents of Georgia; and Lovett & Tharpe is not licensed nor has it ever been licensed in Missouri.  There is no evidence that Lovett & Tharpe has an office or employees in Missouri, that they solicit business in Missouri, that they provide services or close sales in Missouri, that they sell products to Missouri purchasers, that they purchase products from Missouri sellers (other than in the instant transaction), or that they carry

Rather, they assert that their true relationship is with Mossy Oak Apparel, a subsidiary of Russell Corporation which is headquartered in Mississippi, and which also maintains facilities in Georgia. *Id.,* Exhibit A (Declaration of Joel Coe), at 2.  Plaintiffs have not refuted defendants' assertion that Racoe's true business relationship is with Mossy Oak Apparel, instead of with Russell Corporation itself.  As discussed *infra,* even if Racoe did have a contract with Russell Corporation, that one contract would be insufficient to establish general jurisdiction over it in Alabama.  Thus, the motion to strike should be denied as moot.  The court also notes that, because general jurisdiction would not exist even if Racoe did have a contract with Russell Corporation, the dispute over the extent of that contractual relationship does not present a genuine issue of *material* fact, sufficient to preclude the entry of summary judgment.

[41]The forum state in *Borg-Warner* was Missouri, whose long-arm statute, like Alabama's "extended to the extent permissible under the due process clause." *Borg-Warner,* 786 F.2d at 1057.

on any other activity there.

*Id.* at 1057.

This court, construing the Alabama long-arm statute, also has addressed the general jurisdiction issue. In *Mercantile Capital,* 193 F. Supp. 2d 1243, this court held that a plaintiff's mere allegation that the defendant transacted business in Alabama on a regular basis was insufficient to establish general personal jurisdiction, when the defendant presented specific evidence to the contrary. The plaintiff in *Mercantile Capital* asserted that the following contacts were sufficient to satisfy general jurisdiction:

> (1) Integretel [the defendant] has performed billing and collection activities relating to thousands of transactions between its clients and end users in Alabama; (2) Integretel has remitted tax payments on behalf of its clients to Alabama authorities; (3) Integretel has an informational website that may be accessed via the Internet by Alabama residents; (4) Integretel has placed advertisements in trade publications that have a national circulation; and (5) Integretel was named a defendant and appeared in a prior lawsuit in Alabama, paying a sum that went towards the settlement.

*Id.* at 1251. These contacts were deemed insufficient to establish general jurisdiction, however, because Integretel was incorporated in, and had its principal place of business in, California. *Id.* at 1246. It was not licensed to conduct business in Alabama, and did not maintain a registered agent in Alabama to receive service of process. *Id.* It did not have any kind of physical presence within Alabama, *i.e.,* it had

"no place of business, employees, mailing address, telephone number, real estate, bank accounts or any other interest in property located in the state." *Id.* It also had not entered into a contract in Alabama or contracted with an entity domiciled in Alabama, and it had never filed suit in an Alabama court. *Id.* Without evidence of any of these "continuous and systematic business contacts," the court refused to uphold the assertion of general jurisdiction over Integretel.

Likewise, in the present case, Lamar's assertion that Racoe regularly does business in Alabama is insufficient to establish general personal jurisdiction over Racoe. Lamar has not contradicted the specific facts presented by Racoe to establish that it lacks the requisite "continuous and systematic general business contacts." Racoe is a Tennessee corporation with its principal place of business in Tennessee. All of its officers are Tennessee residents. It does not have an office in Alabama, nor has it ever had such an office. It is not registered to do business in Alabama, nor has it ever been registered in Alabama. There is no indication from the record that Racoe actively solicits business in Alabama through advertising or any other means. There also is no indication that Racoe owns any property in Alabama, that it has any employees in Alabama, that it holds any bank accounts in Alabama, or that it has ever filed suit in an Alabama court.

The court must note that the courts in both *Lovett & Tharpe* and *Mercantile*

*Capital* based their refusal to uphold general jurisdiction at least partially on facts that are different from those presented here. In *Lovett & Tharpe*, the court relied on the fact that the defendants did not "provide services or close sales in [the forum state]"; that they did not "sell products to [purchasers in the forum state]"; and that they did not "carry on any other activity there." *Lovett & Tharpe*, 786 F.2d at 1057. In *Mercantile Capital*, the court noted that the defendant had not entered into a contract in Alabama or contracted with an entity domiciled in Alabama. *Mercantile Capital*, 193 F. Supp. 2d at 1246. Here, assuming plaintiffs' allegations to be true, Racoe has entered into a contract with Russell Corporation, an entity domiciled in Alabama. If Racoe has carried out business pursuant to its contract, it likely has provided services or closed sales in, sold products to, or carried on other business activity in Alabama.

Even so, the court concludes that Racoe's one contract with an Alabama company, standing alone, is insufficient to establish general jurisdiction. One contract simply is not "systematic and continuous." *See Sheritt*, 216 F.3d at 1292 (citations omitted) ("merely purchasing materials, even if done regularly, is not contact sufficient to support personal jurisdiction"); *Butler*, 83 F. Supp. 2d at 1266 (mere sale of goods in Alabama was insufficient to establish general jurisdiction over an out-of-state defendant when defendant was not registered to do business in Alabama, did not own property or have an office in Alabama, and did not have any agents in Alabama).

### b.    Individual defendants

Plaintiffs have offered no evidence, or even any allegations, that individual defendants Ray Coe, Joel Coe, and Geraldine Coe have "systematic and continuous general business contacts" with Alabama. *See Sheritt,* 216 F.3d at 1292. Jurisdiction over the individual defendants may not be premised solely on the fact that they are officers of Racoe. *See Delong Equipment Co. v. Washington Mills Abrasive Co.,* 840 F.2d 843, 852 (11th Cir. 1988). Even if such derivative general jurisdiction were possible, it would not exist over the individual defendants here, because general jurisdiction does not exist over Racoe. Further, plaintiffs have not produced any evidence of any systematic, continuous general business contacts that Ray Coe, Joel Coe, and Geraldine Coe have which are *unrelated* to their respective capacities as officers of Racoe. Accordingly, plaintiffs have failed to meet their burden of proving that general jurisdiction in a federal court in Alabama may be asserted over Ray Coe, Joel Coe, or Geraldine Coe.

### 2.    Specific Jurisdiction

Specific jurisdiction, on the other hand, arises from an out-of-state defendant's activities in the forum state which *are related* to the plaintiff's cause of action. The specific jurisdiction analysis implicates due process "minimum contacts" principles. *See International Shoe,* 326 U.S. at 316, 66 S. Ct. at 158.

-18-

The determination of whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment also is a two-part inquiry. "First, we must decide whether each defendant has established 'minimum contacts' with [the forum state]. Second, we must determine whether the exercise of personal jurisdiction would offend 'traditional notions of fair play and substantial justice.'" *Robinson*, 74 F.3d at 258 (11th Cir. 1996) (citations and some quotation marks omitted).

The Eleventh Circuit has adopted a three-part test to determine if minimum contacts are present, *i.e.,*

> First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . ., thus invoking the benefits and protections of its laws." Third, the defendant's contacts with the forum must be "such that [the defendant] should reasonably anticipate being haled into court there."
>
> *Vermeulen* [*v. Renault, U.S.A., Inc.*, 965 F.2d 1014, 1016 (11th Cir. 1992), *modified and superseded by,* 985 F.2d 1534 (11th Cir.), *cert. denied,* 508 U.S. 907, 113 S. Ct. 2334, 124 L. Ed. 2d 246 (1993)]. The availability of specific jurisdiction depends on the relationship among the defendant, the forum, and the litigation. *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.,* 786 F.2d 1055, 1057 (11th Cir. 1986).

*Francosteel Corp. v. M/V Charm,* 19 F.3d 624, 627 (11th Cir. 1994). In summary, when a nonresident person or entity purposefully avails himself (or itself) of the laws of the forum state, courts sitting within that state are entitled to assert specific

jurisdiction over that party.

### a.   Corporate defendant Racoe

It is clear that whatever contacts Racoe has with Alabama relate to or arise out of plaintiff's cause of action. *See Francosteel,* 19 F.3d at 627.  Racoe entered into a contract with Lamar, an Alabama corporation, and events surrounding the performance of that contract are the basis of all of plaintiffs' claims.  *See Paul, Hastings, Janofsky & Walker, LLP v. City of Tulsa,* 245 F. Supp. 2d 1248, 1256 (N.D. Ga. 2002) (finding the first factor of the three-part minimum contacts test "easily satisfied" when the out-of-state defendant's contract with the plaintiff was the basis of the suit); *Allegiant Physicians Services, Inc. v. Sturdy Memorial Hospital,* 926 F. Supp. 1106, 1114 (N.D. Ga. 1996) (same).

However, "[t]he existence of a contractual relationship between a nonresident defendant and a[n Alabama] resident is not sufficient in itself to meet the requirements of due process." *Jet Charter Service, Inc. v. W. Koeck,* 907 F.2d 1110, 1113 (11th Cir. 1990) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478-79, 105 S. Ct. 2174, 2185, 85 L. Ed. 2d 528 (1985)).  Rather, the court must apply the second and third prongs of the minimum contacts test, and decide whether Racoe purposefully availed itself of the privilege of conducting activities *within Alabama,* such that it could reasonably anticipate being hailed into an Alabama court. *See Paul, Hastings,* 245 F.

Supp. 2d at 1256 (citing *Francosteel,* 19 F.3d at 627).

> In making this determination, the court must take

> a "highly realistic" approach that recognizes that a "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." It is these factors — prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing — that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.

*Francosteel,* 19 F.3d at 627-28 (citing *Rudzewicz,* 471 U.S. at 478-79, 105 S. Ct. at 2185). "[G]reat weight is often placed on which party initiated the contact that led to the business relationship . . . because 'parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their actions.'" *Railcar, Ltd. v. Southern Illinois Railcar Co.,* 42 F. Supp. 2d 1369, 1374 (N.D. Ga. 1999) (citing *Allegiant Physicians Services,* 926 F. Supp. at 1114) (in turn citing *Francosteel,* 19 F.3d at 628).

Following this reasoning, other district courts within the Eleventh Circuit have refused to recognize constitutionally sufficient minimum contacts. In *Railcar,* 42 F. Supp. 2d 1369, the United States District Court for the Northern District of Georgia held that the Illinois defendant had not purposely availed itself of the privilege of doing business in Georgia, so as to justify the exercise of personal jurisdiction in that

-21-

state. In so holding, the court emphasized that the parties' agreement was initiated by the Georgia plaintiff, not by the Illinois defendant. *Id.* at 1374. The court also noted that the agreement was executed in Illinois, and that no representative of the defendant ever visited Georgia during the parties' contract negotiations. *Id.* The defendant delivered the goods it produced pursuant to the contract to states other than Georgia, and it did not conduct any other activities within Georgia in relation to the contract. Thus, the realities of the agreement and the parties' actual course of dealing did not indicate that the parties intended "a continuing relationship with [the defendant] in Georgia or long term connections to the forum state." *Id.* at 1375. Instead, the parties' relationship was limited to performance of a single contract over a three-year time period. *Id.*

Based upon these facts, the court reached the conclusion that minimum contacts did not exist, despite the fact that representatives of the defendant had made personal visits to Georgia. The court discounted the importance of those visits, because they were made for the purpose of reaching a settlement of the parties' dispute long after the contract had been formed, not for the purpose of negotiating or overseeing the contract itself. *Id.*

Similarly, in the present case, Lamar, the Alabama plaintiff, initiated the parties' relationship by approaching Racoe in Tennessee to begin contract

negotiations.  Indeed, Lamar admits in its brief that *it* contacted Racoe to discern Racoe's interest in entering into the contract.[42]  Further, it is undisputed that all contract negotiations between Lamar and Racoe occurred in Tennessee, and that the parties' agreement ultimately was reached in Tennessee.  It also is undisputed that Racoe purchased the fabric it used to make the pants from outside Alabama, and that it shipped the finished pants directly to California, not to Alabama.  Although Racoe representatives did visit Alabama on two occasions, neither visit was for the purpose of negotiating or overseeing the parties' agreement.  Instead, both visits were directed at supervising Racoe's relationship with *Southern Mills, not* to Racoe's relationship with *Lamar.*  Further, there is nothing in the record to indicate that Racoe and Lamar contemplated any relationship beyond the performance of the single contract at issue here.  In summary, all of the activities material to the performance of the parties' contract occurred *outside* the state of Alabama.[43]

Plaintiffs' fall-back argument that Racoe has the requisite minimum contacts with Alabama is based upon the fact that Racoe's contract with Lamar contains a choice-of-law clause, stating that Alabama law will govern all disputes under the

---

[42]Brief in opposition to summary judgment, at 1.

[43]The same analysis applies to plaintiffs' non-contract state law claims against Racoe.  All of these claims arise out of the parties' contractual relationship, and all of the events relevant to those claims occurred in Tennessee, not in Alabama.  *See* Joel Coe declaration, at ¶¶ 11-20.  Indeed, the record reflects that *all* of the events relevant to the parties' relationship, other than Coe and Ferguson's two visits to Alabama, occurred in states other than Alabama.

-23-

contract.[44] Plaintiffs attached a copy of the agreement allegedly containing the choice-of-law clause both to their complaint, and to their response to defendants' motion for summary judgment.[45] Defendants deny that the documents presented by the plaintiffs actually constitute the parties' true agreement. Even so, that factual dispute is sufficiently not material to preclude the entry of summary judgment because, even if Racoe had entered into a contract with Lamar containing an Alabama choice-of-law clause, personal jurisdiction still would not exist over Racoe in an Alabama court.

Although choice-of-law clauses may be considered along with other contacts to determine whether due process principles have been satisfied, "standing alone [the clauses are] insufficient to confer jurisdiction." *Rudzewicz,* 471 U.S. at 482, 105 S. Ct. at 2187. Because Racoe does not have any other "minimum contacts" with Alabama, the Alabama choice-of-law clause is not sufficient to establish jurisdiction.

Based on the foregoing, the court holds that Racoe does not have the requisite minimum contacts with Alabama to justify the exercise of specific personal jurisdiction over it in an Alabama court.[46] Because Racoe does not have minimum

---

[44]Brief in opposition to summary judgment, at 13-20.

[45]*See* complaint, at Exhibit A; Plaintiffs' Evidentiary Submissions, at Exhibit 2.

[46]The court notes that the cases cited by plaintiffs to support their assertion that Racoe had purposeful contacts with Alabama are distinguishable. All of plaintiffs' cases involve the "stream of commerce" theory, in which one party places a product in the stream of commerce in one state, and the product reaches and causes injury in the forum state because of the defendant's purposeful acts. *See Asahi Metal Industry Co. v. Superior Court of California, Solano County,* 480 U.S. 102, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987); *Wenger Tree Service v. Royal Truck & Equipment, Inc.,* 853 So. 2d 888 (Ala. 2002); *Ex parte Lagrone,* 839 So. 2d 620 (Ala. 2002); *Ex parte McInnis,* 820

contacts with Alabama, the court need not reach the second prong of the due process analysis, *i.e.,* whether the exercise of personal jurisdiction over Racoe in an Alabama court would offend "traditional notions of fair play and substantial justice." *Robinson*, 74 F.3d at 258.

### b.   Individual defendants

The court again notes that personal jurisdiction over individual defendants Ray Coe, Geraldine Coe, and Joel Coe cannot be premised on the mere fact that they are officers of Racoe.

> [I]f the claim against the corporate agent rests on nothing more than that he is an officer or employee of the nonresident corporation and if any connection he had with the commission of the [alleged wrongdoing] occurred without the forum state, we agree that, under sound due process principles, the nexus between the corporate agent and the forum state is too tenuous to support jurisdiction over the agent personally.

*DeLong Equipment Co.,* 840 F.2d at 852 (citing *Columbia Briargate Co. v. First National Bank,* 713 F.2d 1052, 1064-65 (4th Cir.1983)). Instead, "[t]he crucial matter is whether the individual defendant can be held personally liable for acts committed in the forum . . . ." *DeLong Equipment Co.,* 840 F.2d at 852.

Plaintiffs assert that specific  personal jurisdiction can be exercised over Joel Coe because of his two visits to Alabama.[47]  The court disagrees.  Although Coe's

---

So. 2d 795 (Ala. 2001). Here, Racoe did not ship any products to Alabama, and it did not place any items into the stream of commerce that eventually reached and caused injury in Alabama.

[47]Brief in opposition to summary judgment, at 4.

visits did arise at least remotely from Racoe's relationship with Lamar, the visits were not related to events that give rise to plaintiffs' claims. Joel Coe traveled to Alabama for the purpose of observing a demonstration of a sewing technique given by Southern Mills, a Georgia company, and to discuss the quality of the supplies provided by Southern Mills. Plaintiffs' claims have nothing to do with Southern Mills' demonstration, or with Coe's discussions with Southern Mills over supplies. There is no indication in the record that Joel Coe could be held personally liable for anything he did while he was in Alabama. All other involvement Joel Coe had with Lamar occurred while Coe was in Tennessee. Thus, Joel Coe lacks the requisite minimum contacts with Alabama, and this court cannot exercise personal jurisdiction over him.

Plaintiffs also assert that Ray Coe has sufficient contacts with Alabama because he signed the pants contract with Lamar, and because he is the father of Joel Coe. Because Ray Coe has been "directly involved in the tortuous [sic] behavior of Racoe," plaintiffs allege, he should be kept in the action.[48] Plaintiffs acknowledge that Geraldine Coe is "more remote," but nonetheless assert that she is subject to specific personal jurisdiction because she is the President of Racoe, and was "guiding the actions of Racoe" during part of the time period relevant to this action.[49] Plaintiffs do not allege that Ray Coe and Geraldine Coe ever were physically present in Alabama,

---

[48]Brief in opposition to summary judgment, at 5.
[49]*Id.*

however, or that they performed any acts *in Alabama* for which they could be held liable. Thus, Ray Coe and Geraldine Coe lack the requisite minimum contacts with Alabama, and this court cannot exercise personal jurisdiction over them.

Based on the foregoing, this court cannot constitutionally exercise either general or specific personal jurisdiction over any defendant based solely on plaintiffs' state law claims. Thus, if plaintiffs' complaint contained *only* state law claims, asserted under the court's diversity jurisdiction, defendants' motion to dismiss for lack of personal jurisdiction clearly would be due to be granted. However, the personal jurisdiction analysis takes an entirely different turn when plaintiffs' civil RICO claim is considered.

## B.   Personal Jurisdiction Over RICO Claim

Plaintiffs' federal RICO claim mandates a separate personal jurisdiction analysis.[50] The venue and service of process provision of the RICO statute states, in pertinent part, that "[a]ll other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(d).[51] The Eleventh

---

[50]The parties have failed to recognize the distinction between the personal jurisdiction analysis for plaintiffs' state law claims, and the personal jurisdiction analysis for plaintiffs' RICO claim. Neither party has addressed the standard governing personal jurisdiction for the RICO claim.

[51]The full text of 18 U.S.C. § 1965, which bears the heading "Venue and Process," reads as follows:

    **(a)** Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such

Circuit has interpreted this provision to allow for nationwide service of process. *See Republic of Panama v. BCCI Holdings S.A.,* 119 F.3d 935, 939-42 (11th Cir. 1997). Thus, personal jurisdiction over all defendants, based on plaintiffs' RICO claim, can exist in any federal district court in the nation, as long the exercise of such jurisdiction comports with the Due Process Clause of the Fifth Amendment. *See id.* at 942 ("In analyzing a motion to dismiss for lack of personal jurisdiction . . ., we first determine whether the applicable statute potentially confers jurisdiction over the defendant, and then determine whether the exercise of jurisdiction comports with due process.") (citations omitted).[52]

---

person resides, is found, has an agent, or transacts his affairs.

**(b)** In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

**(c)** In any civil or criminal proceeding instituted by the United States under this chapter in the district court of the United States for any judicial district, subpenas [sic] issued by such court to compel the attendance of witnesses may be served in any other judicial district, except that in any civil action or proceeding no such subpena [sic] shall be issued for service upon any individual who resides in another district at a place more than one hundred miles from the place at which such court is held without approval given by a judge of such court upon a showing of good cause.

**(d)** All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.

[52]"It is well established that when . . . a federal statute provides the basis for jurisdiction, the constitutional limits of due process derive from the *Fifth,* rather than the Fourteenth, Amendment. *BCCI Holdings,* 119 F.3d at 942 (citing *In re Chase & Sanborn Corp.,* 835 F.2d 1341, 1344 (11th Cir. 1988)) (emphasis supplied). Even so, "opinions interpreting the Fourteenth Amendment due process clause provide important guidance for us in determining what due process requires in cases involving nationwide service of process." *BCCI Holdings,* 119 F.3d at 944 (citing *Chase & Sanborn,* 835 F.2d at 1344).

Under the Fifth Amendment due process standard governing personal jurisdiction, defendants must first show that their liberty interests "actually have been infringed," because they have been forced to litigate in Alabama, plaintiff's chosen forum. *Id.* at 946. In making this determination, the court may consider defendants' contacts with Alabama (the forum state), but those contacts "play no magical role in the Fifth Amendment analysis." *BCCI Holdings,* 119 F.3d at 946. Instead, the court should consider defendants' "aggregate contacts with the nation as a whole," as well as "the factors used in determining fairness under the Fourteenth Amendment." *Id.* Defendants' burden is a heavy one: *i.e.,* defendants must "demonstrate that the assertion of jurisdiction in the forum will 'make litigation so gravely difficult and inconvenient that [they] unfairly [are] at a severe disadvantage in comparison to [their] opponent.'" *Id.* at 948 (citing *Rudzewicz,* 471 U.S. at 478, 105 S. Ct. at 2185) (citations and internal quotation marks omitted). Thus, it is only "in highly unusual cases that inconvenience will rise to a level of constitutional concern." *BCCI Holdings,* 119 F.3d at 947.

If defendants are able to satisfy their heavy burden of proving that litigation in Alabama will be unconstitutionally inconvenient, the court may exercise personal jurisdiction over them

> *only if* the *federal interest* in litigating the dispute in the chosen forum
> outweighs the burden imposed on the defendant[s]. In evaluating the

federal interest, courts should examine the federal policies advanced by the statute, the relationship between nationwide service of process and the advancement of these policies, the connection between the exercise of jurisdiction in the chosen forum and the plaintiff[s'] vindication of [their] federal right[s], and concerns of judicial efficiency and economy. Where, as here, Congress has provided for nationwide service of process, courts should presume that nationwide personal jurisdiction is necessary to further congressional objectives.

*BCCI Holdings,* 119 F.3d at 948 (emphasis supplied).

Further, if this court constitutionally can exercise personal jurisdiction over defendants for plaintiffs' RICO claim, the doctrine of "pendent personal jurisdiction" also will allow it to exercise personal jurisdiction over defendants for plaintiffs' state law claims. *IUE AFL-CIO Pension Fund v. Herrman,* 9 F.3d 1049, 1056 (11th Cir. 1993), *cert denied,* 513 U.S. 822, 115 S. Ct. 86, 130 L. Ed. 2d 38. The logic behind the pendant personal jurisdiction doctrine is as follows:

When a federal statute authorizes a federal district court to exercise personal jurisdiction over a defendant beyond the borders of the district and the defendant is effectively brought before the court, we can find little reason not to authorize the court to adjudicate a state claim properly within the court's subject-matter jurisdiction so long as the facts of the federal and state claims arise from a common nucleus of operative facts. The defendant will have to adjudicate the facts of the federal claim, and it could impose only a minimal burden to require the defendant to provide a defense on the factually related state claim. We agree with the observation that judicial economy and convenience of the parties is best facilitated by a consideration of all legal theories arising from a single set of operative facts.

*Gill v. Three Dimension Systems, Inc.,* 87 F. Supp. 2d 1278, 1283 (M.D. Fla. 2000)

(quoting *Starlight International, Inc. v. Herlihy,* 13 F. Supp. 2d 1178, 1185 (D. Kan. 1998)) (in turn quoting *ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 628 (4th Cir. 1997)).  Although the Eleventh Circuit has not specifically ruled on the issue, "most federal courts that have dealt with the subject have followed the decision in [*Hermann,* 9 F.3d 1049], which upheld jurisdiction over state claims in this situation under the doctrine of pendent personal jurisdiction."  4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1069.7, at 228 (3d ed. 2002).

All defendants in this action can properly be brought before the court pursuant to the RICO statute's nationwide service of process provision, and the facts of plaintiffs' state law and federal RICO claims arise from a common nucleus of operative facts.  Thus, if personal jurisdiction is available with regard to the RICO claim, because of the RICO statute's nationwide service of process provision, pendent personal jurisdiction also will be available with regard to the state law claims.

The preceding discussion of nationwide service of process, due process, and pendent personal jurisdiction provides a framework for the court's analysis.  However, one preliminary conclusion must be reached before the due process and pendent jurisdiction principles even come into play: *i.e.,*

> [w]hen a jurisdictional motion to dismiss depends, as in this case, on the assertion of a right created by a federal statute, the court should dismiss for lack of jurisdiction only if "the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or

otherwise devoid of merit as not to involve a federal controversy.

*BCCI Holdings,* 119 F.3d at 941-42.  The court must determine whether plaintiffs have asserted a "colorable" RICO claim before plaintiffs will be entitled to take advantage of RICO's nationwide service of process provision.  *Id.* at 942; *Hermann,* 9 F.3d at 1055-56.

Other than plaintiffs' complaint, the court does not have before it any information relevant to the issue of whether plaintiffs have asserted a "colorable" RICO claim.  The briefs and evidentiary submissions currently before the court focus on the issue of defendants' contacts with Alabama, and they provide no guidance regarding the viability of plaintiffs' RICO claim.  The court cannot rule on defendants' motion to dismiss or to transfer venue without a more complete record to aid it in deciding the preliminary question of whether plaintiffs have asserted a "colorable" RICO claim.[53]

## IV. CONCLUSION

Based on the foregoing, the court will reserve ruling on all pending motions until the parties have had an opportunity to engage in expedited discovery for the limited purpose of determining whether plaintiffs have asserted a "colorable" RICO

---

[53]"'Personal jurisdiction . . . is an essential element of the jurisdiction of a district . . . court, without which the court is powerless to proceed to an adjudication.'" *Mercantile Capital,* 193 F. Supp. 2d at 1247 (citations omitted).  Thus, because the court cannot presently determine whether it has personal jurisdiction over any of the defendants named in plaintiffs' complaint, it must reserve ruling on defendants' alternative motion to transfer venue.

claim, and to submit briefs to the court on that issue.  The action will be stayed in the meantime.  An appropriate order will be entered contemporaneously herewith.

DONE this ___*8*<sup>th</sup>___ day of March, 2004.

_____
United States District Judge